MARY E. WIBLE *v.* WILLIAM H. ASHCRAFT *et al.*

(No. 8029)

Submitted January 28, 1935. Decided February 12, 1935.

*Steptoe & Johnson, James M. Guiher* and *Oscar J. Andre,* for appellant.

*Charles B. Johnson* and *William G. Johnson,* for appellees.

WOODS, JUDGE:

On February 14, 1928, Francis Marion Ashcraft, then 86 years of age, and a resident of Harrison county, provided for the disposition of his entire estate, both real and personal, by the execution and recordation of four deeds and the execution of a will. The deeds (each reciting a consideration of ''five dollars in hand paid,'' and reserving a life estate to the grantor) purported to convey: (1) the ''home place,'' consisting of 10 acres, and occupied at the time by the grantor, to William H. Ashcraft, son; (2) a tract, consisting of six town lots in Wolf Summit to the two children of William H. Ashcraft; (3) two lots in Reynoldsville to C. E. Pernell, caretaker; and (4) one lot in Reynoldsville to Mary E. Wible. The will, in addition to nominating an executor, and directing the payment of debts and burial expenses out of the personal estate, provides:

> ''I have already given to my beneficiaries, except my granddaughter hereinafter named, their respective shares in my estate by deeds dated the 11th day of February, 1928, and now desiring to give to my granddaughter, Mary Wible, such further amounts out of my estate, in addition to the property already deeded to her, as I feel she is entitled to receive in order that she may have an equal share of my estate; I therefore give, devise and bequeath unto my granddaughter, Mary Wible, all the rest and residue of

my estate, real personal, and mixed, of whatever kind, character and description, and wheresoever situate, that I may own at the time of my death, after the payment of my just debts and funeral expenses as above provided, to be hers absolutely forever.''

Francis Marion Ashcraft died February 10, 1930. Shortly thereafter the plaintiff, Mary E. Wible, moved onto the ''home place'' and notified defendant, William H. Ashcraft, by letter, that she claimed title thereto by virtue of a deed executed by the testator to her, as grantee, on January 24, 1928, the same having been recorded February 3, 1928. In this deed, which was executed in consideration of $10.00 and ''love and affection'', a life estate had been reserved to the grantor.

William H. Ashcraft sought to impeach the will, under Code 1931, 41-5-11. However, its validity was upheld by court order of July 2, 1932, based on jury verdict. And, on November 4, 1932, the present suit was instituted by Mary E. Wible for the purpose of having the deed of February 14, 1928, conveying the ''home place'' to William H. Ashcraft, set aside as a cloud. The defendant's answer, with respect to his claim for affirmative relief, avers in substance, among other things, that if the prayer of the plaintiff's bill should be granted, the will of Francis Marion Ashcraft, now deceased, would be frustrated, and defendant, the son of said testator, disinherited, and prays that plaintiff be estopped from claiming under deed of January 24, 1928, and said will.

The trial court took the position that the will called for an election on the part of plaintiff, and, in view of the fact that the latter was in possession of the personal property disposed by the will, found for the defendant, and decreed cancellation of plaintiff's deed—in other words, elected for her. It is from such decree that the plaintiff appeals.

Plaintiff, at the outset, asserts that defendant is estopped, by reason of his attempt to impeach the will, from laying claim to the ''home place'' by virtue of the will. But does a proceeding under Code 1931, 41-5-11, jeopardize any rights defendant may have under the will? The statute gives any person in interest, with certain exceptions, the right to make

such attack. But once the validity of the will is established, it must, under the law, be administered truly in accordance with its provisions. Otherwise, the testator's wishes would be frustrated. The tenor of our decisions are to this effect. We held in *Mathews* v. *Tyree,* 53 W. Va. 298, 44 S. E. 526, that the institution of a suit to construe a will does not necessarily preclude a party entitled to do so from impeaching the validity of the paper. And, in *Kerr* v. *Lunsford,* 31 W. Va. 659, 8 S. E. 493, that in a suit seeking to impeach a will, that when a final decree is pronounced in favor of a will on the verdict of a jury rendered on an issue of *devisavit vel non,* the functions of the suit are exhausted, and the bill should be dismissed; that in such suit the construction of the will cannot be involved.

The primary issue raised by this appeal is whether or not the terms of the will are sufficient to require the plaintiff to elect.

The appellant denies the application of the doctrine of election for the reason that the will does not mention the name of the defendant; does not describe the property; and that the testator did not intend the real estate to pass by will. The appellee, however, takes the position that the reference to the deeds is sufficient to incorporate them into the will, and that although the legal title passed subject to testator's life estate, with the execution of the deeds, what was done thereunder is necessary to a construction of the will with reference to the bequest of the personalty, and that, in so far as the disposition of the personalty was concerned, the several tracts of real estate were disposed by the will.

"An unattested or imperfectly attested paper may be incorporated in a will by reference, if the terms of the will, assisted (if necessary) by the surrounding circumstances, are sufficient to identify the paper, and to show the intention of giving effect to it." *Allen* v. *Maddock,* 11 Moore P. C. 427, 14 Reprint 757, 26 Eng. Rul. Cas. 439. The foregoing rule, followed by the English courts, has been frequently cited and followed in this country. *Newton* v. *Seaman's Friend Society,* 130 Mass. 91, 39 Am. Rep. 433. In the latter case Chief Justice Gray said: "If a will executed and witnessed as re-

quired by statute, incorporates in itself by reference any document or paper not so executed and witnessed, whether the paper be in the form of a will or codicil, or a deed or indenture, or a mere list or memorandum, the paper so referred to, if it was in existence at the time of the execution of the will, and is identified by clear and satisfactory proof as the paper referred to therein, takes effect as part of the will, and should be admitted to probate as such.'' The same rule was invoked by the Supreme Court of Virginia in the case of *Pollock* v. *Glassell*, 2 Gratt. (Va.) 439.

Have the deeds been incorporated into the will in the present case? A reference is made to the transfer to ''my beneficiaries'' by deeds ''dated the 11th day of February, 1928''; the deeds were in existence at the time of the execution of the will; and the intent to incorporate them for purpose of explanation is sufficiently shown by the words ''and now desiring to give to my granddaughter, Mary Wible, such further amounts out of my estate, in addition to the property already deeded to her, as I feel she is entitled to receive *in order that she may have an equal share of my estate.*'' True, the will does not set out in detail the property conveyed by the deeds, or the names of the several grantees; but this is not necessary where the deeds can be identified with sufficient certainty to warrant their incorporation. The appellant does not deny the existence of the deeds, or that the four in question are the ones referred to in the will.

But the appellant insists that there must be a clear intention on the part of the testator to dispose, by will, of property which does not belong to him; and that this intention must appear from the words of the will itself—not by extrinsic evidence.

It is at this point that the appellant and appellee seem to differ in their applicability of the doctrine of ''election''. The appellant would confine it to cases in which the testator makes transfer, by will, of property other than his own. She stresses the fact that the legal title, subject to the life estate, passed on the date of the execution of the deeds. But is the doctrine so limited?

''The principle of equitable election arises where an obli-

gation is imposed upon a party to choose between two inconsistent or alternative rights or claims in cases where there is a clear intention of the person from whom he derives one that he should not enjoy both." *Swan* v. *Swan's Exrs.*, 136 Va. 496, 117 S. E. 858, 864; *Rau* v. *Krepps*, 101 W. Va. 344, 133 S. E. 508. Or, as stated in point 1, syllabus, *Tolley* v. *Poteet*, 62 W. Va. 231, 57 S. E. 811: "One entitled to any benefit under a will or other instrument must, if he claims that benefit, abandon every right and interest the assertion of which would defeat even partially any of the provisions of that instrument."

While it is true that the legal title to the property passed, subject to the life estate, on February 14, 1928, it must be borne in mind that such transfers were in contemplation of death, and a part of a plan for the disposition of the testator's entire estate, both real and personal. So, when we consider the bequest to the appellant we must take into account the transfer by deed of the "home place" to William H. Ashcraft. The latter's deed can have no standing except under the testator's plan for the disposition of his property. It, however, shows the testator's intention regarding the disposition of the personalty. Such being the case, the appellant is put on election as to whether she will relinquish the "home place", or renounce the specific bequest of the personal property.

But, was the chancellor warranted in setting appellant's deed aside on the theory that there had been an election? It is true that the appellant had taken charge of the personalty under the will. But she did this on the theory that it was an absolute gift under the will. Now that it has been determined that the right to the personalty is contingent upon her election to give up the "home place," she should be accorded an opportunity to act, either to renounce the bequest, or give up the property theretofore conveyed to her by deed. In this particular the chancellor was in error. We, therefore, reverse the decree in this respect, and remand the case for the purpose of according the appellant the right to elect. In all other respects the ruling of the chancellor is affirmed.

*Affirmed in part; reversed in part; remanded.*