IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2014 Term

No. 12-1541

**FILED**

**June 5, 2014**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

CATHY CYFERS, JOSEPH CYFERS, and MEGAN CYFERS,
Petitioners

v.

JACK CYFERS, HELEN CYFERS, ROGER CYFERS
DOTTIE CYFERS, and WAYNE CYFERS,
Respondents

Appeal from the Circuit Court of Cabell County
The Honorable F. Jane Hustead, Judge
Civil Action No. 10-C-744

REVERSED AND REMANDED

Submitted: February 11, 2014
Filed: June 5, 2014

John F. Hussell, IV, Esq.                    Ancil G. Ramey, Esq.
Staci N. Criswell, Esq.                        Hannah C. Ramey, Esq.
Dinsmore & Shohl LLP                       Steptoe & Johnson PLLC
Charleston, West Virginia                   Charleston, West Virginia
Counsel for the Petitioners                 Counsel for the Respondents


Daniel J. Konrad, Esq.

Scott K. Sheets, Esq.
Anna M. Price, Esq.
Huddleston Bolen LLP
Huntington, West Virginia
Attorneys for the Co-Executors and Respondents, Cathy Cyfers and Philip Vallandingham

JUSTICE WORKMAN delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.      "A circuit court's entry of summary judgment is review *de novo*."  Syl.
Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994).

2.      "A motion for summary judgment should be granted only when it is
clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not
desirable to clarify the application of the law."  Syl. Pt. 3, *Aetna Cas. & Sur. Co. v. Fed. Ins.
Co. of N.Y.*, 148 W. Va. 160, 133 S.E.2d 770 (1963).

3.      "Where it appears from the language of a will that deeds bearing a
certain date were included in the testator's plan for the disposition of his property and
prompted the provision for the one bequest made therein, and the reference to the deeds is
sufficient to reasonably identify them, such deeds become part and parcel of the will as
completely as if copied therein for the purpose of ascertaining the testator's intention
regarding the said bequest."   Syl. Pt. 1, *Wible v. Ashcraft*, 116 W. Va. 54, 178 S.E. 516
(1935).

4.      There are three elements that must exist in order to incorporate a
document by reference into a will.  First,  the extrinsic document sought to be incorporated
must be in existence at the time the will is executed.  Second, the intention of the testator to

i

incorporate the extrinsic document into the will must appear clearly from the will. Third, the reference in the will must identify the extrinsic document with sufficient certainty that the written document referenced in the will is the written document proffered.

WORKMAN, Justice:

The Petitioners, Cathy Cyfers, Joseph Cyfers, and Megan Cyfers,[1] appeal from a November 28, 2012, order entered by the Circuit Court of Kanawha County, West Virginia, granting summary judgment in favor of the Respondents, Jack Cyfers, Helen Cyfers, Roger Cyfers, Dottie Cyfers and Wayne Cyfers, who are beneficiaries under a Will.[2]

## I. Facts and Procedural History

This case arises from the Last Will and Testament ("the Will") of Lois Jayne Cyfers Miller ("the Decedent"), who died on January 7, 2009. The Will was executed by the Decedent on August 15, 2006, and was witnessed by Stacy Clark and Boyce Griffith, Esq. Mr. Griffith also prepared the Will for the Decedent. The Will had an "Exhibit A" attached to it when it was submitted to probate by Philip Vallandingham[3] and Cathy Cyfers, the co-executors (referred to collectively as "the co-executors") named in the Will.[4]

---

[1]Cathy Cyfers was the niece by marriage of Lois Jayne Cyfers Miller ("the Decedent") and a beneficiary under the Will, Joseph Cyfers was the Decedent's nephew, and Megan Cyfers was Cathy's and Joseph's daughter.

[2]The Respondents are also referred to collectively as "the Respondent beneficiaries."

[3]Philip Vallandingham was the decedent's nephew.

[4]On May 14, 2009, the Cabell County Commission ("the County Commission") entered an order admitting the Will including Exhibit A to probate. On that same day, another order was entered by the County Commission appointing both Philip Vallandingham and Cathy Cyfers as co-executors of the Will.

Article IV of the Will referenced Exhibit A and provided that other devises could be made through Exhibit A, "which exhibit [wa]s of even date" with the Will. Exhibit A also contained handwritten notations throughout the five-page document using different colors of ink and included a post-execution date in the Decedent's handwriting. The exhibit set forth bequests made by the Decedent to various relatives as referenced in Article IV of the Will. The exhibit, standing alone, was not signed by the Decedent or witnessed.[5] Included among the handwritten bequests was the following: "Roger & Dottie[;] Nephew & Wife [;] Coin Collection in Strong Box at Home." There was another handwritten bequest to "Debbie Cyfers[;] (Niece in Utah)." That bequest provided: " 3/4 coat Mink & Leather, Many family Albums (20 some) and Loose Pictures, Keep in Family always!!!, Many good coats, suits, purses, fur pieces, Various Jewelry, 1 diamond engagement ring, 1 Anniversary ring (8 small diamonds), Mixture too various to list, Mantle clock, 'Howard Miller' Anniversary Clock." There were other varied bequests of personal property, bank accounts and real estate contained within Exhibit A. On the last page of the exhibit was the following handwritten language:

> I love all my relatives and I have no children. My sisters & brothers have left their children their estates; therefore, some do not need as others. Am taking this all into consideration, am trying to do what, I think, is best. <u>Gertrude</u> was so good to Mom, Dad and Uncle Elmer!!! Since Joe Miller, my love, help[ed] [to] make a lot of this money I want his only live

---

[5]As will be discussed more fully in Section III *infra*, there is no requirement under the law regarding incorporation by reference that the document sought to be incorporated be witnessed and signed by the testator.

2

sibling to have <u>equal</u> <u>monies</u>.  I love you Delores. (11/29/06[)].

The date of November 29, 2006, was nearly four months after the Will was executed.

A dispute arose between the co-executors of the Will and some of the beneficiaries of the Will concerning the administration of the Decedent's estate.[6] On October 7, 2010, Jack Cyfers, Helen Cyfers and Rogers Cyfers petitioned the County Commission to remove the co-executors stating that "the Executors of Lois Jayne Cyfers Miller's estate have continually refused to administer the estate, pursuant to the Decedent's last wishes, as set out in her Last Will and Testament.  They refuse to distribute the assets as directed by the Will."

A few days later, on October 13, 2010, the co-executors filed a petition for declaratory relief in the circuit court, asking for

> (a) An order determining whether the handwritten notations on the face of the will alter the will or have no effect on the will; (b) An Order determining whether the handwritten attachment, Exhibit A, is validly incorporated by reference; [and] (c) For such other relief and direction in the administration of said estate as the Court deems proper.

On November 24, 2010, following a hearing regarding the petition to remove the co-executors, the County Commission entered an order ruling that according to the

---

[6]The appraisement of the Decedent's estate listed the total value of probate assets at $296,987.

Decedent's Will, she left "all her tangible personal property to Cathy Cyfers and all of the remainder of her personal property, including the proceeds from the sale of her home . . . to those people listed in Exhibit 'A' attached to the Will." The County Commission further determined that the co-executors had failed to administer the Decedent's estate as set out in her Will and that the co-executors had contested the validity of the Will, which placed them in conflict with the heirs to the Decedent's estate and with the Decedent's wishes. Consequently, the County Commission revoked the appointment of Mr. Vallandingham and Mrs. Cyfers as co-executors of the Decedent's estate and appointed the Sheriff of Cabell County to serve as executor.[7]

The declaratory judgment action proceeded in circuit court. The parties submitted cross-motions for summary judgment. By letter dated September 26, 2011, the circuit court initially granted the co-executors' motion, concluding that Exhibit A was not validly incorporated by reference into the Will under West Virginia law and directed the co-

---

[7]Upon appeal of the County Commission's decision to circuit court, by ordered entered April 20, 2011, the court determined that "[t]here is no evidence of wrongdoing by Cathy Cyfers or Philip Vallandingham" and awarded them their statutory executor fees "for all actions taken in their capacity as Co-Executors." Despite finding no wrongdoing, the circuit court ordered that "Sheriff Thomas McComas shall remain as Administrator - C.T.A. D.B.N of the Estate of Lois Jayne Cyfers Miller until the Declaratory Judgment action is resolved to minimize fees." The circuit court, however, also ordered that Mrs. Cyfers and Mr. Vallandingham "in their capacities as Co-Executors of the Estate of Lois Jayne Cyfers, by and through counsel Bruce L. Stout, Esquire . . . shall not take a position in the upcoming declaratory judgment action." The April 20, 2011, order was not appealed. The co-executors followed the circuit court's directive both before that court and before this Court on appeal.

4

executors to prepare an order reflecting that ruling.

On January 12, 2012, the co-executors submitted an order as directed by the circuit court. On January 17, 2012, the respondent beneficiaries filed an objection to the proposed order and filed a motion for reconsideration. By order entered September 18, 2012, the circuit court granted the respondents' motion for reconsideration and set the matter for trial on October 9, 2012.

On October 9, 2012, the parties appeared for trial. At that time the circuit court inquired of the parties if they wished to have the circuit court rule on renewed motions for summary judgment. The parties agreed that the issues could be resolved by the pending summary judgment motions, thereby waiving their right to a jury trial in favor of a ruling by the circuit court as a matter of law.

By order entered November 28, 2012, the circuit court granted summary judgment in favor of the Respondent beneficiaries under the Decedent's Will. The circuit court concluded that Exhibit A was properly incorporated by reference into the Decedent's Will. More precisely, the circuit court, in relevant part, determined that "'Exhibit A' (a) is repeatedly referenced in the Will; (b) is attached to the Will; [and] (c) is written in the Testator's handwriting[]. . . ." Regarding only the handwritten notations found on the Will and Exhibit A that were clearly made after the date the Will was executed, the circuit court

5

determined that "all of the disputed notations with dates after the Will was executed are surplusage and can be disregarded as the remainder of the Will is more than adequate to express . . . [the Decedent's] intent and to dispose of her property." Finally, after concluding that the handwritten notations on the Will itself[8] and the single handwritten notation containing a post-execution date on Exhibit A were surplusage and were to be disregarded, the trial court found that "there is noting to indicate that the Will together with Exhibit A do not adequately and accurately reflect how . . . [the Decedent] intended her Estate to be divided upon her death."

On appeal, the Petitioners argue that the circuit court erred: 1) in concluding that Exhibit A to the Will was properly incorporated by reference into the Will; 2) in concluding that the handwritten notations contained within Exhibit A clearly made after the date that the Will was executed are surplusage and were to be disregarded; and 3) by considering the Decedent's intent with respect to whether Exhibit A was properly incorporated by reference into the Will.[9] Based upon a review of the parties' briefs and oral

---

[8]Even though only one of the two handwritten notations found on the Will itself had contained a post-execution date, it was undisputed that both notations on the Will occurred after the date the Will was executed as the Will was typewritten. *See infra* note 9.

[9]In a cross-assignment of error, the Respondents contend that if the entire Exhibit A is invalidated because the Decedent made post-execution notations on the face of the exhibit, then the Will should be invalidated because the undisputed evidence demonstrated that the Decedent made post-execution notations on the face of the Will as well. Articles II and VII of the Will contained handwritten notations, one of which contained a date after the Will was

(continued...)

6

arguments, the appendix record, and both parties' agreement that the issues were susceptible to resolution by summary judgment, we conclude there was no other material evidence available and therefore insufficient evidence[10] to allow Exhibit A to be incorporated by reference into the Will. We reverse the circuit court and remand for entry of an order consistent with this opinion.

---

[9](...continued)
executed. Specifically, under Article II of the Will entitled "PAYMENT OF FUNERAL AND ESTATE EXPENSES" there was a handwritten notation dated August 17, 2007, which provided: "I went to McGhee Handley with Cathy took care of (Paid by check) for my needs. Save all of you the trouble!!" The date of August 17, 2006, was over a year after the Will was executed. There was also a handwritten notation under Article VII of the Will entitled "BURIAL" which provided: "My Blazer is to go to Cathy!!! Sam & Andrew buy my house."

We readily dispense with the Respondents' cross-assigned error for which they offered no legal support. Both parties agree that the law concerning post-execution alterations to a will provides that a will is not invalidated by the striking out of certain words and the insertion of other words that do not change the intention or have any effect on the will. Under general principles concerning wills, "[w]here the alteration is an immaterial one, the validity of the will is not affected whether made before or after the execution of the will, and the alteration, addition, or interlineation in such cases is ignored." 95 C.J.S. *Wills* § 218 (2013). The circuit court found that the two alterations in the Decedent's Will had "no impact on any testamentary dispostion." We agree with the circuit court that these two notations are immaterial and should be disregarded.

[10]Establishing that an extrinsic document sought to be incorporated by reference into a will was in existence at the time the will was executed can involve a factual dispute that must be resolved by a trier of fact. In this case, however, the parties agreed to have this case resolved by the circuit court as a matter of law and waived their right to a jury trial. In so doing, the parties conceded that there was no "genuine issue of fact to be tried." *See Aetna Cas. & Sur. Co.*, 148 W. Va. at 160, 133 S.E.2d at 770, Syl. Pt. 3. Consequently, neither party could offer any additional evidence outside of that used to support their respective motions regarding what handwritten bequests existed in Exhibit A on the date of execution of the Will. Because of this acknowledgment by the parties, it would be futile to send this case back to the circuit court for additional facts.

7

## II.  Standard of Review

"A circuit court's entry of summary judgment is reviewed *de novo*."  Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994); *accord* Syl. Pt. 2, *Estate of Robinson v. Randolph Cnty. Comm'n*, 209 W. Va. 505, 509-10, 549 S.E.2d 699, 703-04 (2001).  Further,  "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law."  Syl. Pt. 3, *Aetna Cas. & Sur. Co. v. Fed. Ins. Co. of N.Y.*, 148 W. Va. 160, 133 S.E.2d 770 (1963).  We will reverse a circuit court's grant of summary judgment if, as a matter of law, the moving party is not entitled to judgment. *Williams v. Precision Coil, Inc.*, 194 W. Va. 52, 59, 459 S.E.2d 329, 336 (1995).  With the standards of review in mind, we review the issues raised.

## III.  Discussion

The determinative issue is whether the circuit court erred in concluding that Exhibit A to the Will was in existence at the time of execution of the Will and was properly incorporated by reference into the Will.[11]  The circuit court ruled that "[i]n this case, 'Exhibit A' (a) is repeatedly referenced in the Will; (b) is attached to the Will; (c) is written in the Testator's handwriting; and (d) Ms. Miller's prior Will, executed in 1999,[12] also had an

---

[11]There is no dispute that the Will was properly executed.  Further, we have already determined in note nine, *supra*, that the handwritten notations contained within the Will were of no effect on the Will.

[12]Evidence regarding the Decedent's prior 1999 will was offered through the
(continued...)

8

'Exhibit A' attached indicating her wishes." (Footnote added). The Petitioners argue that the Exhibit A that was found with the Will and presented for probate was not the same Exhibit A that existed at the time the Will was executed. It is apparent from the single handwritten date that is found in Exhibit A that at a least portion of Exhibit A was added after the Will was executed. Conversely, the Respondent beneficiaries argue that the circuit court did not err in incorporating Exhibit A by reference into the Will.

The controlling case on this issue in West Virginia is *Wible v. Ashcraft*, 116 W. Va. 54, 178 S.E. 516 (1935). One of the issues presented to the Court in *Wible* was whether the reference to the deeds in the will was sufficient to incorporate the deeds by reference into the will. *Id.* In deciding the incorporation by reference argument, the Court stated:

> "An unattested or imperfectly attested paper may be incorporated in a will by reference, if the terms of the will, assisted (if necessary) by the surrounding circumstances, are sufficient to identify the paper, and to show the intention of giving effect to it." *Allen v. Maddock*, 11 Moore P. C. 427, 14 Reprint 757, 26 Eng. Rul. Cas. 439. The foregoing rule, followed by the English courts, has been frequently cited and followed in this country. *Newton v. Seaman's Friend Society*, 130 Mass. 91, 39 Am. Rep. 433. In the latter case Chief Justice

---

[12](...continued)
deposition of the Decedent's attorney who prepared both the 1999 will and the Will that is the subject of the instant appeal. The 1999 will has no impact on the present matter, but was offered to show that the will also had an exhibit A that was similar to the instant exhibit. The 1999 exhibit A was typewritten in its entirety; however, it contained many handwritten changes after the date of execution as well.

Gray said: "If a will, executed and witnessed as required by statute, incorporates in itself by reference any document or paper not so executed and witnessed, whether the paper referred to be in the form of a will or codicil, or of a deed or indenture, or of a mere list or memorandum, the paper so referred to, *if it was in existence at the time of the execution of the will*, and is identified by clear and satisfactory proof as the paper referred to therein, takes effect as part of the will, and should be admitted to probate as such." The same rule was invoked by the Supreme Court of Virginia in the case of *Pollock v. Glassell*, 2 Grat. (Va.) 439.

116 W. Va. at 57-58, 178 S.E. at 517 (emphasis added). Following other jurisdictions, including Virginia, the Court adopted the doctrine of incorporation, holding in the first syllabus point of *Wible* that

[w]here it appears from the language of a will that deeds bearing a certain date were included in the testator's plan for the disposition of his property and prompted the provision for the one bequest made therein, and the reference to the deeds is sufficient to reasonably identify them, such deeds become part and parcel of the will as completely as if copied therein for the purpose of ascertaining the testator's intention regarding the said bequest.

*Id.* at 54, 178 S.E. at 516, Syl. Pt. 1.

Applying this law to the facts of *Wible*, the Court concluded that:

Have the deeds been incorporated into the will in the present case? A reference is made to the transfer to "my beneficiaries" by deeds "dated the 11th day of February, 1928"; the deeds were in existence at the time of the execution of the will; and the intent to incorporate them for purpose of explanation is sufficiently shown by the words "and now desiring to give to my granddaughter, Mary Wible, such further amounts out of my estate, in addition to the property already

10

deeded to her, as I feel she is entitled to receive in order that she may have an equal share of my estate." True, the will does not set out in detail the property conveyed by the deeds, or the names of the several grantees; but this is not necessary where the deeds can be identified with sufficient certainty to warrant their incorporation. The appellant does not deny the existence of the deeds, or that the four in question are the ones referred to in the will.

*Id.* at 58, 178 S.E. at 517-18.

Even though the *Wible* case dealt with incorporating a deed by reference, the law relied upon by the Court concerning the doctrine of incorporation by reference expressly provided that any document or paper could be incorporated by reference into a will. Extracting the salient requirements for incorporation by reference from the *Wible* decision, we now hold that there are three elements that must exist in order to incorporate a document by reference into a will. First, the extrinsic document sought to be incorporated must be in existence at the time the will is executed. Second, the intention of the testator to incorporate the extrinsic document into the will must appear clearly from the will.[13] Third, the reference

_____

[13]The Petitioners' assignment of error that the circuit court incorrectly considered the testator's intent with respect to whether Exhibit A was properly incorporated by reference into the Will lacks merit. The intent of the testator to incorporate an exhibit into a will is a necessary requirement that must be met for an extrinsic writing, such as Exhibit A in this case, to be incorporated by reference. *See Wible*, 116 W. Va. at 58, 178 S.E. at 517-18. The record would seem to suggest that the Decedent intended to incorporate her handwritten notations contained within Exhibit A into her Will. We, however, can not simply resolve this case on the testator's intent as it is but one of three necessary requisites that must be established before an extrinsic writing can be incorporated by reference. As discussed in greater detail *infra* in this opinion, the Respondent beneficiaries failed to establish what

(continued...)

11

in the will must identify the extrinsic document with sufficient certainty that the written

document referenced in the will is the written document proffered.[14]  *See id.* at 54 and 58,

_____

[13](...continued)
portions of Exhibit A were in existence at the time the Will was executed.  *See id.*

[14]The doctrine of incorporation by reference is well established not only in this State, but in other jurisdictions as well.  *See Montgomery v. Blankenship*, 230 S.W.2d 51, 54 (Ark. 1950) ("The general rule in regard to incorporation of a document by reference as approved by this court . . . is as follows: 'If a will, duly executed and witnessed according to statutory requirements, incorporates into itself by reference any document or paper not so executed and witnessed, whether such paper referred to is in the form of a will, codicil, deed, or a mere list or schedule, or other written paper or document, such paper if it was in existence at the time of the execution of the will, and is identified by clear and satisfactory proof as the paper referred to, takes effect as a part of the will, and is entitled to probate as such.'"); *In re Wunderle's Estate*, 181 P.2d 874, 878-79 (Cal. 1947) ("[T]here is incorporation by reference when one of the writings is a complete testamentary instrument, and refers to another document in a manner clearly designed to accomplish that purpose.  The requisites of a valid incorporation by reference are that the incorporated document must be clearly identified and in existence at the time the will makes reference to it.") (citations omitted); *In re Estate of McGahee*, 550 So. 2d 83 (Fla. Dist. Ct. App. 1989), *review denied*, 560 So.2d 232 (Fla. 1990) ("By statute [Section 732.512(1), Fla. Stats. (1987)] Florida law allows a writing to be incorporated by reference into a will if (1) the writing is in existence at the time the will is executed, (2) the language of the will manifests an intent to incorporate by reference, and (3) the language of the will describes the writing sufficiently to permit its identification."); *Daniel v. Tyler's Ex'r*, 178 S.W.2d 411, 414 (Ky. 1943) ("But as stated in Section  250 of Page on Wills:  '"The will itself must refer to such paper to be incorporated as being in existence at the time of the execution of the will, in such a way as reasonably to identify such paper in the will, and in such a way as to show testator's intention to incorporate such instrument in his will and to make it a part thereof. Such document must in fact be in existence at the time of the execution of the will. Such document must correspond to the description thereof in the will and must be shown to be the instrument therein referred to. These requisites must co-exist in order to incorporate a document into the will. The absence of any one of them will prevent such incorporation."'"); *Tyson v. Henry*, 514 S.E.2d 564, 566 (N.C. Ct. App.), *reviewed denied*, 540 S.E.2d 752 (N.C. 1999) ("Generally, in order for a document to be incorporated by reference: (1) the defective document referred to must have been in existence at the time of the will's execution and (2) the reference to the defective document must be 'clear and distinct' so full assurance is given that the defective document
(continued...)

12

178 S.E. at 516 and 517-18.

Having set forth the necessary requisites that must be established in order for a document to be incorporated by reference into a Will, the focus of this appeal is whether Exhibit A, the extrinsic document sought to be incorporated into the Decedent's Will, was in existence at the time the Will was executed. *Id.*

In discerning the answer to the question before us, there is no dispute that there was an Exhibit A attached to the Will at the time the Will was submitted to probate. There is, however, no evidence regarding what bequests were contained within Exhibit A at the

---

[14](...continued)
was intended to be incorporated in the testamentary wishes of the decedent."); *J. I. Triplett's Ex'r v. Triplett*, 172 S.E. 162, 167-68 (Va. 1934) ("There are three requisites in order that an extrinsic paper may be incorporated into a will by reference. It must be a paper in actual existence at the date of the execution of the will; it must appear from the face of the will that it is a paper in actual existence at that time; and it must be identified and described with reasonable certainty in the will."); *see also* 95 C.J.S. *Wills* § 211 (2013) ("For an unattested instrument to be incorporated into and become part of the will or codicil under the doctrine of incorporation by reference, the instrument must be in existence at the time the will is executed. The testator's intention to incorporate the existing document into a will must be clearly manifested in the will. A reference in a will to an extrinsic writing must describe the extrinsic writing with such particularity as to leave no doubt in the court's mind that the writing referred to is the very document offered for probate as having been incorporated by reference. Any paper, not properly executed, but incorporated by reference in a properly executed will and identified by clear and satisfactory proof in that will as the paper referred to, takes effect as part of the will.").

time the Will was executed.[15]  Rather, the evidence submitted before the circuit court was that the Decedent's attorney, Mr. Boyce A. Griffith, gave the Decedent a blank form to fill out regarding certain bequests of tangible personal property and real estate to beneficiaries that the Decedent would identify in the exhibit.  The practice in Mr. Griffith's office was that after completing the blank document, the Decedent would return the completed form to his office prior to the will being executed.  All that Mr. Griffith had in his file regarding the Decedent's Will was a copy of the Will before it was executed without any exhibit attached thereto.  Even though Mr. Griffith testified that Exhibit A was in existence on the date the Decedent's Will was executed, he could not state what language or bequests were contained within Exhibit A when the will was executed.  Mr. Griffith further stated that even though he did not have any documentation to show any of the language contained in Exhibit A on the date the Will was executed, he testified that the Decedent had "already written" out what she wanted included in Exhibit A at the time the Will was executed.  However, Mr. Griffith testified that at least some of the notations contained within Exhibit A were made after the Will was executed on August 15, 2006.  No additional evidence was offered by the parties to show what language was contained within Exhibit A on the date the Will was executed.

Given the uncertainty as to what bequests were contained in Exhibit A at the date of execution of the Decedent's Will, we are compelled to conclude that there was

---

[15]Mr. Griffith testified that he did not keep an original or copy of the Will once it was executed, rather he gave the executed Will to his client.

insufficient evidence[16] to allow the incorporation of Exhibit A by reference into the Will. Unfortunately, the undisputed evidence shows that at least one of the bequests contained within Exhibit A was made after the date the Will was executed. Further, the Decedent's attorney was unable to state what bequests or language was contained within Exhibit A at the time the Will was executed. These facts together with the Respondents' inability to present any additional evidence on this issue must necessarily result in the conclusion that it is simply impossible to prove that the Exhibit A that was submitted affixed to the Decedent's Will for probate was the same Exhibit A that existed at the date the Will was executed. As the Court stated in *Wible*, the existence of the extrinsic document, Exhibit A, sought to be incorporated *must have been in existence at the time the will was made*. 116 W. Va. at 54 and 58, 178 S.E. at 516 and 517-18 (emphasis added).

Our ruling today is supported by a similar determination made by the Supreme Court of Virginia in the *Triplett* case. *See* 172 S.E. at 167. In *Triplett*, the court considered whether an exhibit had been incorporated by reference into a holographic will. *Id*. A memorandum in the decedent's handwriting referred to as exhibit Y, provided that the decedent was in the process of rewriting his will; however, he did not wish his original will to be affected by his undertaking if he failed to complete it. *Id*. The decedent then stated in exhibit Y that there was a change to his third request made in his will as follows: "The

---

[16]*See supra* note 10.

15

change made in my third request I prefer being substituted for the original." *Id*. Exhibit Y was dated December 11, 1929, and was witnessed and signed by the decedent. *Id*. In the same envelope as exhibit Y, was exhibit X. *Id*. Exhibit X was an unfinished will that the decedent was engaged in rewriting. It contained four enumerated clauses including a third bequest which left $15,000 to the decedent's nephew. *Id*.

The argument before the court in *Triplett* was that exhibit Y incorporated by reference exhibit X, because exhibit Y met the statutory requirements for a holographic will as it was in the decedent's handwriting, witnessed and signed by the decedent. *Id*. at 167. The problem the Virginia court had with this argument was that the decedent had indicated that he was in the process of rewriting his will at the time he indicated in exhibit Y that he desired to change the third bequest. *Id*. at 168. Exhibit Y was dated December 11, 1929, but the decedent did not die until March 6, 1930. So the factual query posed to the *Triplett* court was: "How much of the paper sought to be incorporated by reference was written after Exhibit Y was written; or how much had been written at the date of that exhibit? We do not know. How, then, is it proven that the paper was in existence at the time it was claimed to have been incorporated by reference?" *Id*. The court concluded that there simply were insufficient facts to prove the requisite existence of exhibit X at the date of execution of exhibit Y. *Id*.

Based upon the foregoing discussion, the requisites for incorporating a

16

document into a will by reference cannot be established. This legal doctrine exists in order to prevent a third party from interfering with the intent of a testator by altering a document to be incorporated by reference by fraud or undue influence once the will is executed. Although there is no allegation of wrongdoing or fraud in the instant case, and although the testator may have intended her estate to be distributed in accordance with the bequests identified in Exhibit A, that intent was frustrated by the failure to follow these legal principles which have been developed to protect the sanctity and integrity of the testamentary process. Therefore, the circuit court erred, as a matter of law, in allowing Exhibit A to be incorporated by reference into the Decedent's Will.[17]

---

[17]In reversing the circuit court's decision regarding Exhibit A being incorporated by reference, we would be remiss by failing to discuss the circuit court's erroneous application of the surplusage theory in determining whether Exhibit A was incorporated by reference. Specifically, the circuit court concluded that

> [t]he only evidence relied upon by these defendants to argue that Exhibit A did not exist at the time the Will was executed are certain handwritten notations on Exhibit A, but an examination of the law and evidence clearly indicated that any handwritten notations on the Will or Exhibit A are surplusage and are to be disregarded with respect to whether Exhibit A existed at the time the Will was executed or with respect to . . . [the Decedent's] testamentary intent.

In *Estate of C. J. Teubert*, 171 W. Va. 226, 298 S.E.2d 456 (1982), we were presented with a holographic will that was signed by the testator and witnessed. Appearing at the top of the document, however, were typewritten words, which the Court had to determine were either surplusage or defeated the requirement of a holographic will to be entirely in the testator's handwriting. *Id*. at 229, 298 S.E.2d at 459 (citing W. Va. Code § 41-1-3). We adopted the surplusage theory that was already well-established in other jurisdictions and held that "[w]here a holographic will contains words not in the handwriting of the testator,
(continued...)

17

## IV.  Conclusion

Based upon the foregoing, we reverse the decision of the circuit court and remand this case for entry of an order consistent with this opinion.

Reverse and remanded.

---

[17](...continued)
such words may be stricken if the remaining portions of the will constitute a valid holographic will."  *Id*. at 227 and 230, 298 S.E.2d at 457 and 460, Syl. Pt. 1.  Under the express language of *Estate of Teubert*, the surplusage theory is utilized only in the context of a holographic will.

In the instant case, Exhibit A is not a holographic will as it does not meet the statutory criteria of such a will because it was not signed by the Decedent.  *See* W. Va. Code § 41-1-3 (2010).  Due to the circuit court not being presented with a holographic will and the issue of whether typewritten material contained in such a will should be stricken as surplusage, the circuit court erred in applying the surplusage theory to reach its conclusion that "all of the disputed notations with dates after the Will was executed are surplusage and can be disregarded . . . ."

Notwithstanding the circuit court's application of the wrong legal terminology, as previously discussed in note 9 *supra*, the circuit court correctly disregarded the post-execution notations on the Will itself as the Court correctly determined that the notations had no material impact on the document.

18