466 S.E.2d 801

**Judith A. BARNEY, as Committee for Retha Summers, Plaintiff Below, Appellant,**

v.

**Dorsey Eugene AUVIL, Fiduciary of The Estate of Elsie Willadean Auvil; and Builders Center, Inc., Defendants and Third–Party Plaintiffs Below, Appellees,**

v.

**SHARP CORPORATION, Third–Party Defendant Below, Appellee.**

No. 22963.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 27, 1995.

Decided Dec. 13, 1995.

---

LaVerne Sweeney, Grafton, for Appellant.

David L. Wyant, Shaun L. Peck, Shuman, Annand & Poe, Wheeling.

PER CURIAM:

Judith A. Barney, as committee for her sister, Retha Summers, appeals the decision of the Circuit Court of Barbour County denying her motion to amend her complaint and her motion for reconsideration in her effort to include the Sharp Corporation, a third party defendant, as a direct party defendant. Finding that the statute of limitations barred Ms. Barney's claim against the Sharp Corporation, the circuit court refused to allow Ms. Barney to amend her complaint to include Sharp as a direct party defendant. Because we find Mrs. Barney's motion to amend her complaint should have been granted and the issue of when Mrs. Barney knew that the

Sharp Corporation ought to have been named as the defendant should have been submitted to the jury, we reverse the decision of the circuit court and remand this case for further proceedings.

## I.

### FACTS AND PROCEDURAL BACKGROUND

On October 18, 1990, a fire destroyed the home of Elsie Willadean Auvil in Barbour County, West Virginia. Retha Summers, a retarded adult, was living with Ms. Auvil, under the Department of Health and Human Services adult protective care program. During the fire, both Ms. Summers and Ms. Auvil were burned. Ms. Auvil said that a kerosene heater, she purchased from Builders Center, Inc., started the fire. On November 19, 1990, Ms. Barney, Ms. Summers' sister, was appointed as the "Committee for Retha Summers" to transact business. On May 19, 1991, Ms. Auvil died.

Because the kerosene heater lacked data identifying the manufacturer, in June 1991, Ms. Barney through her lawyer sent parts of the kerosene heater to Richard Henderson, Ph.D., the kerosene heater expert that had been retained. The heater was distributed under the trade name of Radiant King. On October 10, 1991, Ms. Barney filed suit against the Estate of Ms. Auvil (Dorsey Eugene Auvil, fiduciary) and Builders Center, Inc. (Builders), the store where Ms. Auvil allegedly purchased the heater, seeking recovery for Ms. Summers' injuries. Ms. Barney, in her second set of interrogatories to Builders, sought to discover the identity of the heater's manufacturer. On March 20, 1992, Builders answered by saying the heater's manufacturer was unknown but believed that Sharp Electronics may have had a role in manufacturing the heater. Builders did not supplement its answers.[1]

On June 2, 1992, Dr. Henderson wrote to Frederick E. Grim, P.E., another expert in kerosene heaters, requesting information about the company that manufactured the Radiant King heater that allegedly caused the fire. On August 12, 1992, Mr. Grim responded by referring Dr. Henderson to a 1982 article in Consumers Reports for information on the manufacturer.

After Builders' expert had examined the heater in the Fall of 1993, the parties agreed to permit Builders to bring in the Sharp Corporation as a third party defendant. On November 15, 1993, Builders filed a third party complaint against Sharp.[2] In the December 1993 depositions, both Dr. Henderson and Builders' expert identified the heater's manufacturer as the Sharp Corporation.

On April 7, 1994, Sharp answered Builders' third party complaint and on July 13, 1994, Ms. Barney filed a motion to include Sharp as a direct party defendant. In a September 19, 1994 hearing (the order was not entered until November 16, 1994), the circuit court denied Ms. Barney's motion based on a finding that the statute of limitations barred her claim against Sharp. Ms. Barney filed a motion to reconsider and included information on the June and August 1992 correspondence between Dr. Henderson and Mr. Grim, which heretofore had not been included in the record. After a hearing, the circuit court, by order dated February 1, 1995, denied the motion to reconsider.

Ms. Barney appealed to this Court alleging the following errors: (1) The circuit court erred in failing to apply the twenty year statute of limitations specified in W.Va.Code 55–2–15 (1923) which is available in this case because Ms. Summers is a permanently incompetent person; (2) The circuit court erred in failing to toll the running of the

---

**1.** The record shows that because of lack of service Builders was unsuccessful in bringing a third party suit against the wholesale distributor and the distributor of the kerosene heater.

**2.** *See* W.Va.Code 55–2–21 (1981), which provides, in pertinent part:

After a civil action is commenced, the running of any statute of limitation shall be tolled

for, and only for, the pendency of that civil action as to any claim which has been or may be asserted therein by counterclaim, whether compulsory or permissive, cross-claim or third-party complaint. . . .

*See also, Sitzes v. Anchor Motor Freight, Inc.,* 169 W.Va. 698, 704 n. 6, 289 S.E.2d 679, 683 n. 6 (1982).

statute of limitations until the identity of the manufacturer was discovered and in finding that Ms. Barney knew the identity of the manufacturer in 1991; (3) The circuit court erred in failing to allow the amendment under Rule 15 of the *W.Va.R.Civ.P.;* and, (4) The circuit court erred in failing to allow Ms. Barney to include Sharp as a direct defendant under Rule 14 of the *W.Va.R.Civ.P.*[3] We begin our discussion with the standard of review we apply to the major issue in this appeal, namely, whether the statute of limitations bars this action.

## II.

### DISCUSSION

■ Ms. Barney contends that the circuit court erred as a matter of law when it refused to allow her to amend her complaint to bring a direct suit against Sharp.[4] Our standard of review was discussed in *Phillips v. Fox,* 193 W.Va. 657, 661, 458 S.E.2d 327, 331 (1995), which stated:

> In reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review. *See* syl. pt. 1, *Burnside v. Burnside,* No. 22399, [194] W.Va. [263], [460] S.E.2d [264] (Mar. 24, 1995).

In *Phillips v. Fox,* 193 W.Va. at 662, 458 S.E.2d at 332, we noted that "[a]ppellate oversight is therefore deferential, and we review the trial court's findings of fact following a bench trial, including mixed fact/law findings, under the clearly erroneous standard." In Syl. pt. 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994), we said

3. *See* section II.C. for the reasons why we decline to address Ms. Barney's assignments of error concerning the twenty-year statute of limitations and Rule 14 of the *W.Va.R.Civ.P.*

4. The circuit court in its February 1, 1995 order noted that "with the previous denial ..., the Court believes that this constitutes a final order consistent with Rule 54(b) of the West Virginia Rules of Civil Procedure." Rule 54(b) (1978) states, in pertinent part:

that "[a] circuit court's entry of summary judgment is reviewed *de novo.*" *See Williams v. Precision Coil, Inc.,* 194 W.Va. 52, 459 S.E.2d 329 (1995). We note that generally a motion to amend a complaint is addressed to the sound discretion of the circuit court (*see Hanshaw v. City of Huntington,* 193 W.Va. 364, 367, 456 S.E.2d 445, 448 (1995); *State ex rel. State Farm Fire & Cas. Co. v. Madden,* 192 W.Va. 155, 159, 451 S.E.2d 721, 725 (1994); *Nellas v. Loucas,* 156 W.Va. 77, 191 S.E.2d 160 (1972); *Perdue v. S.J. Groves & Sons Co.,* 152 W.Va. 222, 161 S.E.2d 250 (1968)); however, because the circuit court's decision is based on matters proper for a jury's determination, we have reviewed the matter *de novo.*

Our *de novo* review of the circuit court's denial of Ms. Barney's motions to amend and for reconsideration is similar to summary judgment in that the trial court reached its decision through a cold record, similar to the record we have to consider in conducting our appellate review. *See State ex rel. Brewer v. Starcher,* 195 W.Va. 185, 191, 465 S.E.2d 185, 191 (1995). Even when our review is *de novo,* "[w]e review a circuit court's underlying factual finding under a clearly erroneous standard." *See Staten v. Dean,* 195 W.Va. 57, 62, 464 S.E.2d 576, 581 (1995).

On appeal although Ms. Barney alleges four assignments of error, only the questions of when the statute of limitations began running and if Rule 15 of the *W.Va.R.Civ.P.* allows Ms. Barney's amendment were argued before the circuit court. Ms. Barney's other two assignments were raised for the first time on appeal and although we have considered them, we find they are without merit. Because the central question on appeal concerns the running of the statute of limitations, we address that question first.

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

## A.

### Discovery Rule

Ms. Barney argues that the circuit court erred in failing to toll the running of the statute of limitations until she knew or with reasonable diligence should have known the identity of the manufacturer of the kerosene heater, which allegedly caused the October 18, 1990 fire. Because the heater in a pristine state, fails to identify its manufacturer, Ms. Barney was unable readily to identify the manufacturer and in June 1991, hired an expert, Dr. Henderson, to identify the manufacturer. In a deposition taken on December 1, 1993 by Builders' counsel, Dr. Henderson testified that after he was retained in June 1991, he "looked at ... [the heater] but I couldn't identify a specific model. It looked like a Sharp manufacturer, but there are many models within the Sharp distribution...." In response to a question about who the manufacturer was, Dr. Henderson

answered, "Sharp. I have no question on that...."[5] Nowhere in Dr. Henderson's December 1, 1993 deposition is he directly asked when he first learned the identity of the heater's manufacturer. On July 13, 1994, Ms. Barney filed a motion to amend her complaint to include Sharp as a direct party defendant.[6] Based on Dr. Henderson's December 1, 1993 deposition, the circuit court in a September 19, 1994 hearing (written order entered November 16, 1994) denied Ms. Barney's July 13, 1994 motion to amend because "[i]n June of 1991, or soon thereafter, Dr. Henderson informed plaintiff's counsel that the kerosene heater was manufactured by Sharp Corporation." The circuit court, under the "discovery rule" of *Cart v. Marcum*, 188 W.Va. 241, 423 S.E.2d 644 (1992), concluded that because Ms. Barney failed to seek to amend her complaint until more than two years after June 1991 when she *knew* the manufacturer, Ms. Barney's amendment was barred by the statute of limitations.[7]

---

**5.** In his deposition, Dr. Henderson, plaintiff's expert, gave the following testimony:

Q. (By Mr. Dyer, counsel for Builders). Doctor, when were you first contacted by Mr. Sweeney?

A. (By Dr. Henderson). It would have been in June of 91.

\* \* \* \* \* \*

Q. What—what were you asked to do by Mr. Sweeny?

A. He had a case, he said, involving a kerosene heater, and I think the first problem was trying to identify the heater. And I look at it but I couldn't identify a specific model. It looked like a Sharp manufacturer, but there are many models within the Sharp distribution, under Radiant King and under Aladdin names, and may be others I'm not aware of, that I don't recall.

So I didn't know the specific model, but I knew it had the features that are—that are involved with Sharp-type manufacture, the type of heat baffle, and the igniter and the general design of the—of the system, the reservoir system in that area. But I didn't— I didn't have one that matched it exactly, so I couldn't tell the exact identity of the model.

Q. What—what is your belief, if you were to hazard a guess, or speculate, as to what it was?

A. Sharp. I have no question on that.

\* \* \* \* \* \*

Q. O.K. Fair enough. Fair enough. What else did he ask you to do?

A. Well, he wanted to review some of the work I had done on kerosene heaters, the design aspects, the—our proposals back in

the late 80's, and any further work I had done, so we reviewed that.

Q. Do you know how he got your name?

A. I don't know....

Q. He wanted you to send him some materials or just have a discussion with him about your previous work regarding the design of the heaters or—

A. I think the first concern was to identify the heater, what type it was, the manufacturer, the distributor brand, anything, because there was some question—somebody thought it might have been a Kerason-type heater. But I don't think it looked like a Kerason at all. It's got no relationship to a Kerason.

Q. Is—is that product manufactured by Sharp?

A. I don't think so.

Q. No?

A. I think it's Toyatommee (phonetic) if I'm not mistaken.... So I think I indicated to him that I didn't think it was that at all, that it was more likely Sharp, maybe Aladdin, something like that, but—a Radiant King, yes, it could be, but I couldn't identify it. And that's when we stopped. I don't think we did anything for a couple of years then, a year and a half or so....

**6.** On November 15, 1993, Builders filed a third-party complaint alleging liability against Sharp. The third-party complaint was served on March 18, 1994.

**7.** The applicable statute of limitations is stated in W.Va.Code 55–2–12(b) (1959), which requires an action be brought "within two years next after

After the September 19, 1994 hearing, Mr. Grim, another expert in kerosene heaters, informed Ms. Barney about his 1992 correspondence with Dr. Henderson. The correspondence consists of two letters, a June 2, 1992 letter from Dr. Henderson to Mr. Grim requesting information about who manufactured the heater [8] and Mr. Grim's August 12, 1992 reply referring Dr. Henderson to "Consumers Report" for information.[9] Based on this information, Ms. Barney filed a motion requesting the circuit court to reconsider its denial of her motion to amend. In addition, Ms. Barney also submitted affidavits from Mr. Grim and Dr. Henderson. In his affidavit, Mr. Grim said he wrote the August 12, 1992 letter and after reviewing Dr. Henderson's deposition, he contacted plaintiff's lawyer to "report the difference" between his correspondence with Dr. Henderson and Dr. Henderson's deposition. In his affidavit, Dr. Henderson said that he wrote the June 2, 1992 letter in reference to this case "as he had never previously inspected a Radiant King heater and *he did not know who the manufacturer was when he wrote.*" In a brief order dated February 1, 1995, the circuit court denied Ms. Barney's motion to reconsider and Ms. Barney appealed to this Court.

■ Ms. Barney maintains that our holding in *Cart v. Marcum, supra,* controls.[10] In *Cart v. Marcum,* we found that "under certain circumstances the statute of limitations may be tolled until discovery, [but] the general rule is that the statute of limitations begins to run when the injury occurs." 188 W.Va. at 242–43, 423 S.E.2d at 645–46. Syl. pt. 1 of *Cart v. Marcum,* states:

> Generally, a cause of action accrues (i.e., the statute of limitations begins to run) when a tort occurs; under the "discovery rule," the statute of limitations is tolled until a claimant knows or by reasonable diligence should know of his claim.

*See Clark v. Milam,* 192 W.Va. 398, 402, 452 S.E.2d 714, 718 (1994). Syl. pt. 2 of *Cart v. Marcum,* states: "The 'discovery rule' is generally applicable to all torts, unless there is a clear statutory prohibition of its application." Syl. pt. 3 of *Cart v. Marcum,* states:

> Mere ignorance of the existence of a cause of action or of the identity of the wrongdoer does not prevent the running of the statute of limitations; the 'discovery rule' applies only when there is a strong showing by the plaintiff that some action by the defendant prevented the plaintiff from knowing of the wrong at the time of the injury.

*Accord* Syl. pt. 2, *Donley v. Bracken,* 192 W.Va. 383, 452 S.E.2d 699 (1994).

■ On appeal, Ms. Barney argues that the heater's manufacturer by not identifying itself on its heaters, prevented her from knowing who manufactured the heater. Apparently, the same unburned model as the burned heater was examined and, even in a non-damaged state, this model failed to identify the manufacturer. The plaintiff also notes that Builders in its answer to her second set of interrogatories did not know the identify of the manufacturer and that Builders had to consult an expert to identify the manufacturer. Indeed, even the experts, including the Builders' expert, researched to identify the manufacturer. *See supra* note 8 for Sharp's position.

Based on Sharp's failure to include any identification on the heater it manufactured, we find that circuit court correctly concluded that the "discovery rule" tolled the statute of limitations until Ms. Barney knew "or by

---

the right to bring the same shall have accrued if it be for damages for personal injuries."

8. The June 2, 1992 letter said, in pertinent part: "Also, do you have an address, distributor, or manufacturer's name for a Radiant King heater. RK100S"

9. Mr. Grim's August 12, 1992 reply stated, in pertinent part:
Radiant King RK100S
At least 10 yrs old—Company

Out of Business Address Unk.
See Consumers Report Oct 82
Issue for Description.

10. Sharp Corporation alleges that the "discovery rule" does not apply in the case *sub judice* because no action by Sharp prevented her from knowing that Sharp manufactured the heater, and therefore, she knew or with reasonable diligence should have known Sharp was the manufacturer as of the October 18, 1990 fire.

reasonable diligence should [have] know[n] of ... [her] claim."

■ The central question on appeal is factual, namely when did Ms. Barney know "or by reasonable diligence should [have] know[n] of ... [her] claim." In support of her position that the earliest she could have known Sharp's identity was after August 1992, Ms. Barney emphasizes: (1) the December 1, 1993 deposition's lack of a direct question concerning when Dr. Henderson, her expert and the deponent, knew the identity of the manufacturer; (2) the 1992 correspondence between Dr. Henderson and Mr. Grim; (3) the affidavits of Dr. Henderson and Mr. Grim; (4) Builders' failure to supplement its interrogatory answers after learning the manufacturer's identify; and finally, (5) the difficulty of identify a manufacturer who fails to include that information on or with its heaters.

In support of its position that Ms. Barney knew in June 1991 of Sharp's identity, Sharp emphasizes the December 1, 1993 deposition of Dr. Henderson who said that the manufacturer was "Sharp. I have no question on that," and the failure of Dr. Henderson in his affidavit to retract any of his deposition's statements. *See* note 5 for a more complete recitation of Dr. Henderson's deposition testimony.

Recently in *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 459 S.E.2d 329 (1995), we reiterated our traditional rule regarding summary judgment:

> " 'A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.' Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963). Syllabus Point 1, *Andrick v. Town of Buckhannon*, 187 W.Va. 706, 421 S.E.2d 247 (1992)."

Syl. pt. 1, *Williams v. Precision Coil, Inc.*, *supra.* In *Williams v. Precision Coil, Inc.*, 194 W.Va. at 59, 459 S.E.2d at 336, we found that "at the summary judgment stage, [the circuit court's function] is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.' *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 212 (1986),"

The determination of when Ms. Barney knew or should have known with "reasonable diligence" the identity of the heater's manufacturer is a "genuine issue of fact" or at least presents a desire for "inquiry concerning the facts ... to clarify the application of law." Syl. pt. 1, *Aetna Casualty & Surety Co. v. Federal Ins. Co. of N.Y..* Because of the existence of the factual dispute, we find that the circuit court should have granted Ms. Barney's motion to amend and then submitted the factual issue concerning the running of the statute of limitations to the jury. Our holding today continues to emphasize that " 'it is the province of the jury to resolve conflicting inferences from circumstantial evidence.' " *Williams v. Precision Coil, Inc.*, 194 W.Va. at 60 n. 10, 459 S.E.2d at 337 n. 10, *quoting, Ford Motor Co. v. McDavid*, 259 F.2d 261, 266 (4th Cir.), *cert. denied*, 358 U.S. 908, 79 S.Ct. 234, 3 L.Ed.2d 229 (1958).

### B.

### Rule 15(c) of the West Virginia Rules of Civil Procedure

■ Ms. Barney also alleges that her motion to amend should have been allowed under Rule 15(c) (1978) of the *W.Va.R.Civ.P.* The circuit court held that in order for Rule 15(c) to apply the proposed additional defendant must have "had notice of the institution of the action within the period provided by law for commencing the action against them which would allow for the plaintiff's amended complaint to relate back to the filing of the original complaint."

Rule 15(c) states:

> Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and,

*within the period provided by law for commencing the action against him,* the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him. (Emphasis added.)

In *Maxwell v. Eastern Associated Coal Corporation, Inc.,* 183 W.Va. 70, 73, 394 S.E.2d 54, 57 (1990), we held that "an amendment adding a party would not relate back unless the added party had notice of the bringing of the action within the limitations period." *See Schiavone v. Fortune,* 477 U.S. 21, 106 S.Ct. 2379, 91 L.Ed.2d 18 (1986)[11]; 6A C. Wright, A. Miller and M. Kane, *Federal Practice and Procedure: Civil* § 1498 (1990). The syllabus of *Maxwell v. Eastern Associated Coal Corporation, Inc.,* states:

> Where a plaintiff seeks to change a party defendant by a motion to amend a complaint under Rule 15(c) of the West Virginia Rules of Civil Procedure, the amendment will relate back to the filing of the original complaint only if the proposed new party defendant, prior to the running of the statute of limitations, received such notice of the institution of the original action that he will not be prejudiced in maintaining his defense on the merits and that he knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.

*Accord* Syllabus, *Higgins v. Community Health Ass'n,* 189 W.Va. 555, 433 S.E.2d 266 (1993) (*per curiam*); Syl. pt. 1, *Plymale v. Adkins,* 189 W.Va. 204, 429 S.E.2d 246 (1993) (*per curiam*); Syl. pt. 1, *Marks Construction Co., Inc. v. Bd. of Educ. of County of Wood,* 185 W.Va. 500, 408 S.E.2d 79 (1991).

*See also* Syl. pt. 3, *Rosier v. Garron, Inc.,* 156 W.Va. 861, 199 S.E.2d 50 (1973) (holding that "motions to amend should always be granted under Rule 15 when: (1) the amendment permits the presentation of the merits of the action; (2) the adverse party is not prejudiced by the sudden assertion of the subject of the amendment; and (3) the adverse party can be given ample opportunity to meet the issue"); Syl. pt. 8, *McDowell County Bd. of Educ. v. Stephens,* 191 W.Va. 711, 447 S.E.2d 912 (1994).

In this case, Rule 15(c) does not allow Ms. Barney to amend her complaint unless the jury determines that she knew, or with reasonable diligence should have known, Sharp's identification within two years of July 13, 1994, the date she sought to amend her complaint. Rule 15(c) is not an end run around the statute of limitations. We find that the circuit court correctly applied Rule 15(c) in light of its previous holdings; however, because of our decision concerning the factual question about the tolling of the statute of limitations (*see supra* section II.A.), we find that if this factual question is resolved in favor of Ms. Barney, Rule 15(c)'s requirement of notice prior to the running of the statute of limitations would be met.[12]

## C.

### Assignments of Error Not Raised Below

■ Ms. Barney's other two assignments of error are presented for the first time on appeal. Our general rule is that nonjurisdictional questions not raised at the circuit court level, but raised for the first time on appeal, will not be considered. *Whitlow v. Bd. of Educ. of Kanawha County,* 190 W.Va. 223, 226, 438 S.E.2d 15, 18 (1993); *Shrewsbury v. Humphrey,* 183 W.Va. 291, 395 S.E.2d 535 (1990); *Cline v. Roark,* 179 W.Va. 482, 370 S.E.2d 138 (1988).

11. *Schiavone v. Fortune* discussed the federal rule, which in 1990 was in all relevant respects identical to our Rule 15(c). Rule 15(c) of the *Federal Rules of Civil Procedure* has since been amended in 1991 and 1993.

12. Sharp Corporation also argues that allowing such an amendment would prejudice it because

as a direct party defendant, it would be liable even if Builders is dismissed. Because of the posture of the case, this matter was not raised and addressed by the circuit court, and we decline to address it on this appeal. *See infra* section II.C. discussing our general rule requiring issues be raised before the circuit court.

The rationale behind this rule is that when an issue has not been raised below, the facts underlying that issue will not have been developed in such a way so that a disposition can be made on appeal. Moreover, we consider the element of fairness. When a case has proceeded to its ultimate resolution below, it is manifestly unfair for a party to raise new issues on appeal. Finally, there is also a need to have the issue refined, developed, and adjudicated by the trial court, so that we have the benefit of its wisdom.

*Whitlow v. Bd. of Educ. of Kanawha County,* 190 W.Va. at 226, 438 S.E.2d at 18.

Given Ms. Barney's failure to present these issues for the circuit court's consideration, we have examined them to determine if either presents a justification for allowing an exception to our general rule. Ms. Barney failed to raise the following assignments before the circuit court: (1) the application of the twenty-year statute of limitations provided in W.Va.Code 55–2–15 (1923) [13]; and (2) the ability to proceed directly against Sharp under Rule 14(a) (1978) of the *W.Va.R.Civ.P.* [14]

Because both these assignments present nonjurisdictional questions, and neither presents a justification for allowing an exception to our general rule requiring the raising such questions before the circuit court, we decline to address these issues in the case *sub judice.*

For the above stated reasons, the decision of the Circuit Court of Barbour County is reversed and this case is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

---

**13.** *See Donley v. Bracken,* 192 W.Va. 383, 452 S.E.2d 699 (1994), for a recent discussion of W.Va.Code 55–2–15 (1923).

**14.** *See Peneschi v. National Steel Corp.,* 170 W.Va. 511, 295 S.E.2d 1 (1982), for a discussion of Rule 14 of the *W.Va.R.Civ.P.*