IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2023 Term

_____

No. 22-0074

_____

FILED

**June 13, 2023**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

JUSTINA GABBERT,
Plaintiff Below, Petitioner,

v.

RICHARD T. COYNE, ESQ.,
TRUSTEE OF GERALD COYNE TRUST,
Defendant Below, Respondent.

_____

Appeal from the Circuit Court of Berkeley County
The Honorable Michael D. Lorensen
Civil Action No. 21-C-137

AFFIRMED

_____

Submitted: April 18, 2023
Filed: June 13, 2023

Anthony I. Werner, Esq.                    Joseph L. Caltrider, Esq.
Joseph J. John, Esq.                       Hannah N. French, Esq.
John & Werner Law Offices, PLLC            Bowles Rice LLP
Wheeling, West Virginia                    Martinsburg, West Virginia
Counsel for Petitioner                     Counsel for Respondent

JUSTICE HUTCHISON delivered the Opinion of the Court.

CHIEF JUSTICE WALKER and JUSTICE BUNN concur and reserve the right to file concurring opinions.

JUSTICE WOOTON dissents and reserves the right to file a dissenting opinion.

**SYLLABUS BY THE COURT**

1.      "Appellate review of a circuit court's order granting a motion to dismiss a complaint is de novo." Syl. Pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W. Va. 770, 461 S.E.2d 516 (1995).

2.      "'The trial court, in appraising the sufficiency of a complaint on a Rule 12(b)(6) motion, should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)." Syl. Pt. 3, *Chapman v. Kane Transfer Co., Inc.*, 160 W. Va. 530, 236 S.E.2d 207 (1977).

3.      "The paramount principle in construing or giving effect to a trust is that the intention of the settlor prevails, unless it is contrary to some positive rule of law or principle of public policy." Syl. Pt. 1, *Hemphill v. Aukamp*, 164 W. Va. 368, 264 S.E.2d 163 (1980).

4.      "'In construing a deed, will or other written instrument, it is the duty of the court to construe it as a whole, taking and considering all the parts together, and giving effect to the intention of the parties wherever that is reasonably clear and free from doubt, unless to do so will violate some principal of law inconsistent therewith.' Syl. Pt. 1, *Maddy v. Maddy*, 87 W. Va. 581, 105 S.E. 803 (1921)." Syl. Pt. 2, *Belcher v. Powers*, 212 W. Va. 418, 573 S.E.2d 12 (2002).

5.      "'This Court may, on appeal, affirm the judgment of the lower court when it appears that such judgment is correct on any legal ground disclosed by the record,

i

regardless of the ground, reason or theory assigned by the lower court as the basis for its

judgment.' Syllabus point 3, *Barnett v. Wolfolk,* 149 W.Va. 246, 140 S.E.2d 466 (1965)."

Syl. Pt. 2, *Adkins v. Gatson*, 218 W. Va. 332, 624 S.E.2d 769 (2005).

HUTCHISON, Justice:

Petitioner Justina Gabbert appeals the dismissal of her complaint seeking declaratory relief respecting the ownership of certain real property located in Martinsburg, West Virginia. She contends this property was given to her by way of an amendment to a revocable *inter vivos* trust executed by her betrothed, Gerald Coyne. The Circuit Court of Berkeley County determined that the property did not pass to her upon Mr. Coyne's death. Upon review, we conclude that the circuit court did not err in dismissing petitioner's complaint. Accordingly, we affirm the ruling of the circuit court.

## I.      Factual and Procedural Background

On August 17, 2006, Mr. Coyne executed the Gerald Coyne Trust ("the original trust"). Under its terms, Mr. Coyne was identified as both the "Grantor" and "Trustee," and Respondent Richard T. Coyne as "Successor Trustee." Section 1.2 of the original trust provided, in part:

> This is a revocable trust and I reserve the right to withdraw any part or all of the assets in this trust. I also reserve the right to amend or revoke this trust during my lifetime by a writing, other than a will or codicil to a will, signed by me and delivered to my Co-Trustee, or all trustees then acting, if more than one. At my death, the trust will become irrevocable.

Regarding the administration of the original trust upon Mr. Coyne's death, Section 2.3, entitled "Disposition of Tangible Personal Property," provided, in part:

1

> At my death, I direct my Trustee to dispose of my tangible personal property as follows:
>
> . . . .
>
> B.     <u>Nonbinding Wishes.</u> I may make a list or memorandum expressing how I wish certain items of my tangible personal property to be distributed. It is my hope that my wishes will be carried out, but the list or memorandum shall not be considered part of this trust or legally binding.

The original trust also made specific provisions for petitioner, with whom Mr. Coyne lived for fifteen continuous years leading up to his death and to whom he was engaged to be married.[1] The original trust directed that petitioner "be permitted to occupy the residence which is owned by me or this trust at the time of my death, for a period of one year from the time of my death, provided that we are living together in that residence at the time of my death[,]" and that she be paid $3,000 per month for life provided they were living together at the time of Mr. Coyne's death.

On August 27, 2006, ten days after executing the original trust, Mr. Coyne prepared and signed a handwritten document ("the 2006 writing") on which he wrote at the top, "Gerald Coyne wishes to be carried out" followed by descriptions of certain items of tangible personal property (including a watch, vehicle, tractor, and audio sound system) and whom he wished to receive them. With respect to petitioner, Mr. Coyne wrote, "Justina Gabbert get [sic] all household belongings except those that came from Elnors house [sic]

---

[1] Mr. Coyne had never previously been married and he and petitioner never did marry. Mr. Coyne had no children.

2

& were promised. And the Lexus LS430." The 2006 writing also provided that petitioner was to receive certain real property: "155 Waverly Dr. brick house go to Justina Gabbert free and clear after the one year at 1239 to live in or whatever."[2]

Approximately two years later, on April 16, 2008, Mr. Coyne conveyed 155 Waverly Drive to James W. Steptoe, Trustee, "in trust, nevertheless, to immediately reconvey said real estate to Coyne Properties, LLC" by deed recorded in the Berkeley County Clerk's Office at Deed Book 896, Page 214. On that same date, James W. Steptoe, Trustee, conveyed 155 Waverly Drive to Coyne Properties, LLC, by deed recorded in the Berkeley County Clerk's Office at Deed Book 896, Page 224.[3]

Mr. Coyne subsequently executed an "Amended and Restated" trust, effective November 18, 2016 ("the 2016 instrument"), that not only amended particular terms of the original trust, but also restated all of the original trust terms.[4] The later instrument provided that any wishes Mr. Coyne were to express with respect to the

---

[2] It is undisputed that "1239" refers to the residence at 1239 Showers Lane, Martinsburg, West Virginia, where petitioner and Mr. Coyne were then residing together.

[3] Copies of these deeds were attached to respondent's motion to dismiss. Petitioner does not challenge the authenticity of the deeds. *See Mountaineer Fire & Rescue Equip., LLC v. City Nat'l Bank of W. Va.*, 244 W. Va. 508, 527, 854 S.E.2d 870, 889 (2020) ("Before relying on extraneous materials attached to a motion to dismiss, a trial court must be assured that the authenticity of the materials is undisputed.").

[4] The 2016 instrument is, like the original trust, entitled the "Gerald Coyne Trust." It specifically references the "Original Effective Date" as "August 17, 2006." Respondent was named as "Successor Trustee" under the 2016 instrument just as he was in the original trust.

distribution of his tangible personal property would be "binding" (as compared to the "non-binding wishes" provision included in Section 2.3(B) of the original trust). Specifically, Section 2.3 of the 2016 instrument, "Disposition of Tangible Personal Property," states:

> At my death, I direct my Trustee to dispose of my tangible personal property as follows:
>
> . . . .
>
> B. <u>Binding Wishes.</u> I may make a list or memorandum expressing how I wish certain items of my tangible personal property to be distributed. It is my intent that my wishes will be carried out, and the list or memorandum shall be considered part of this trust and legally binding.

It is undisputed that Mr. Coyne never subsequently made "a list or memorandum expressing how [he] wishe[ed] certain items of [his] tangible personal property to be distributed."

With respect to Mr. Coyne's provisions for petitioner, the 2016 instrument – without mentioning either the 2006 writing or the Waverly Drive residence – directed that petitioner have "full use of and access to our home located at Deep Creek Lake, for the rest of her life[,]" so long as petitioner "has not remarried or cohabitated on a regular basis with another man" after one year following Mr. Coyne's death.

4

Mr. Coyne died on September 27, 2019, at the age of 81,[5] at which time the 2016 instrument became irrevocable according to its own terms.[6] Respondent has acted as Successor Trustee ever since. Respondent subsequently informed petitioner that, despite Mr. Coyne's intention, as stated in the 2006 writing, to leave the Waverly Drive residence to petitioner, the purported conveyance of the residence to her by way of that writing was not valid because, while Section 2.3(B) of the trust permitted the distribution of tangible personal property by external memorandum or list, it did not permit the distribution of real property in that same manner.[7] Petitioner was advised that, as a consequence, the Waverly Drive residence did not pass to her upon Mr. Coyne's death.

Based upon the premise that the 2006 writing was not an external list or memorandum made pursuant to Section 2.3(B) but, instead, an *amendment* to the trust, petitioner filed suit against respondent on May 13, 2021, seeking a declaratory judgment that, pursuant to that writing, she is entitled to legal ownership of the Waverly Drive residence[8] as well as the household belongings other than those items specifically excepted

---

[5] At the time of the filing of the instant complaint, petitioner was 78 years old.

[6] *See* Section 1.2 ("This is a revocable trust . . . . At my death, the trust will become irrevocable.").

[7] *See* Section 2.3(B) ("I may make a list or memorandum expressing how I wish certain items of my *tangible personal property* to be distributed." (Emphasis added)).

[8] In her complaint, petitioner quoted from, and referenced specific provisions of, the 2016 instrument. She also attached a copy of the 2016 instrument to the complaint as well as a copy of the 2006 writing. Petitioner did not reference or attach a copy of the original trust to her complaint. *See* n.9, *infra*.

5

under the trust (Count 1), and alleging claims of breach of fiduciary duty (Count 2), the tort of outrage (Count 3), conversion (Count 4), and "tort damages" (Count 5).

Respondent thereafter filed a motion to dismiss pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure, to which he attached a copy of the original trust. In this motion, respondent argued that petitioner was not entitled to ownership of the Waverly Drive residence because: (1) the 2006 writing could not be a valid amendment to the 2016 instrument as it was executed long before the 2016 instrument was created; (2) neither the 2006 writing nor the Waverly Drive residence was referenced in, or recognized by, the 2016 instrument; (3) Section 2.3(B) of the 2016 instrument, which provides that Mr. Coyne "*may make* a list or memorandum expressing how [he] wish[es] certain items of [his] tangible personal property to be distributed" is prospective in nature and only contemplates a future list or memorandum, thereby nullifying the 2006 writing, which is not referenced in the 2016 instrument; (4) Section 2.3(B) limits the list or memorandum expressing Mr. Coyne's wishes to the distribution of tangible personal property, which would exclude the Waverly Drive residence; and (5) in any event, the Waverly Drive residence, having been conveyed to Coyne Properties, LLC, in 2008, is no longer an asset of the trust and so the purported gift adeemed.

6

In her response to the motion to dismiss,[9] petitioner argued that she sufficiently pled allegations in her complaint to survive a Rule 12(b)(6) motion. She claimed that, although the terms of the original trust permitted Mr. Coyne to "amend or revoke" the trust, it did not permit him to "amend and restate" it as the 2016 instrument purports to do; therefore, the 2016 instrument was itself merely an amendment to the original trust that must be read in conjunction with the 2006 writing, which is likewise a valid amendment giving petitioner the Waverly Drive residence. Petitioner further asserted that respondent's argument that the 2006 writing became a nullity once the 2016 instrument was created is disingenuous because respondent admitted that he distributed certain items of tangible personal property (i.e., a watch and vehicle) pursuant to Mr. Coyne's wishes as set forth in that writing. Additionally, petitioner argued that equitable principles of waiver and/or estoppel should apply because (1) respondent distributed items pursuant to the 2006 writing despite his argument that the writing was a nullity (waiver) and (2) respondent, who petitioner contends acted as Mr. Coyne's attorney and/or confidante at the time the

---

[9] In her response, petitioner acknowledged that she neither referenced nor attached a copy of the original trust to her complaint because she did not have a copy in her possession. However, she took exception to respondent's argument that the complaint "alleges that by the 2006 amendment[,] Gerald changed a prospective iteration of the trust" [i.e., the 2016 instrument], arguing that any such argument "defies logic." *See* Syl. Pt. 3, in part, *McCandless, J.B. & S. v. Warner*, 26 W. Va. 754 (1885) ("The writing to prove such trust need not be made at the time the trust is created, but may be made at any time *thereafter*. . . ." (Emphasis added)). Petitioner argued that, to the extent the circuit court agreed with respondent's reading of the complaint, she would seek leave to amend the complaint to clarify her position that the 2006 writing amended the original trust rather than the 2016 instrument. Petitioner did not seek leave to amend below and, in any event, as discussed in more detail below, this Court agrees with petitioner that the 2006 writing was an amendment to the original trust.

2006 writing was made, "allowed, or outright caused, Gerald to handle his Waverly property in a manner which now serves to defeat Gerald's clear intent to put the property in [petitioner's] hands" (estoppel). Finally, petitioner averred that, even though the Waverly Drive residence was previously conveyed to Coyne Properties, LLC, it is possible that the company's assets passed back to the trust upon Mr. Coyne's death, which would obligate respondent to convey the residence to petitioner pursuant to the 2006 writing. Petitioner contended that she should be permitted to conduct discovery and that dismissal under Rule 12(b)(6) was not appropriate. Respondent submitted a reply reiterating his position.

While respondent's motion to dismiss was pending before the circuit court, petitioner served respondent with discovery requests, including requests for extensive information about Coyne Properties, LLC. Petitioner also served respondent with a notice of deposition. Respondent filed objections to the discovery requests as well as a motion for protective order seeking, *inter alia*, a stay of all discovery (including respondent's deposition) until a ruling on respondent's motion to dismiss has been made. By order entered November 19, 2021, the circuit court granted respondent's motion for protective order.

The circuit court granted respondent's motion to dismiss by order entered November 24, 2021, virtually adopting all of respondent's arguments in support of his

motion.[10] Petitioner subsequently filed a motion to alter or amend the circuit court's dismissal order pursuant to Rule 59(e), to which respondent filed a response. Petitioner submitted a reply. The circuit court denied petitioner's Rule 59(e) motion and this appeal followed.[11]

## II. Standard of Review

This case is before this Court upon an appeal from the circuit court's order denying petitioner's Rule 59(e) motion to alter or amend the order dismissing her complaint under Rule 12(b)(6). Our standard of review of a Rule 59(e) order "is the same standard that would apply to the underlying judgment upon which the motion is based and from which the appeal to this Court is filed." Syl. Pt. 1, in part, *Wickland v. American Travellers Life Ins. Co.*, 204 W. Va. 430, 513 S.E.2d 657 (1998).

It is well established that "[a]ppellate review of a circuit court's order granting a motion to dismiss a complaint is de novo." Syl. Pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W. Va. 770, 461 S.E.2d 516 (1995). We have also held that "'[t]he trial court, in appraising the sufficiency of a complaint on a Rule 12(b)(6) motion, should not dismiss the complaint unless it appears beyond doubt that the plaintiff

---

[10] However, the circuit court did not address petitioner's arguments of waiver and estoppel.

[11] Petitioner also appeals the November 19, 2021, order granting respondent's motion for protective order. Because we affirm the circuit court's order granting respondent's motion to dismiss, we need not address the propriety of that ruling.

9

can prove no set of facts in support of his claim which would entitle him to relief.' *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)." Syl. Pt. 3, *Chapman v. Kane Transfer Co., Inc.*, 160 W. Va. 530, 236 S.E.2d 207 (1977). With these standards to guide us, we now consider the parties' arguments.

## III. Discussion

At issue in this appeal is whether petitioner is entitled to ownership of the Waverly Drive residence by virtue of the 2006 writing that Mr. Coyne created after executing the original trust. Petitioner argues that Mr. Coyne twice exercised his right to amend the original trust: first, when he created the 2006 writing and, second, when he executed the 2016 instrument. She contends that the original trust and the amendments must be read as cumulative, resulting in the Waverly Drive residence passing to petitioner upon Mr. Coyne's death.[12] According to petitioner, the original trust did not permit Mr. Coyne to "amend and restate" the original trust, as the 2016 instrument purported to do, only to "amend or revoke" it, and so the circuit court erred in concluding that the 2016 instrument "replaces all of Mr. Coyne's prior trust document[s], represents a complete statement of his intent, and provides all terms of his trust."

---

[12] Though not acknowledged by petitioner in any of her pleadings, the effect of reading the original trust, the 2006 writing, and the 2016 instrument cumulatively is that petitioner would receive both ownership of the Waverly Drive residence and full use of, and access to, the home at Deep Creek Lake for life.

10

Assuming that the 2006 writing was intended to be an amendment to the original trust, respondent counters that the 2016 instrument was not, as it "amended and restated" the trust in the same instrument. Respondent argues that, by identifying the 2016 instrument as "this trust" throughout the document, Mr. Coyne demonstrated his intent that it replace and, indeed, effectively revoke, both the original trust and 2006 amendment entirely. According to respondent, given that the Waverly Drive residence was, at Mr. Coyne's direction, conveyed away in 2008 and no longer an asset of the trust in 2016, it made sense that, in the 2016 instrument, Mr. Coyne would provide petitioner with a substitute dwelling in which to live by giving her full use of a different home – the Deep Creek Lake house. Respondent contends that because the 2016 instrument does not incorporate the 2006 amendment by reference or otherwise revive it, petitioner is not entitled to ownership of the Waverly Drive residence.

We have long observed that "[t]he paramount principle in construing or giving effect to a trust is that the intention of the settlor prevails, unless it is contrary to some positive rule of law or principle of public policy." Syl. Pt. 1, *Hemphill v. Aukamp*, 164 W. Va. 368, 264 S.E.2d 163 (1980). "'In construing a deed, will or other written instrument, it is the duty of the court to construe it as a whole, taking and considering all the parts together, and giving effect to the intention of the parties wherever that is reasonably clear and free from doubt, unless to do so will violate some principal of law inconsistent therewith.' Syl. Pt. 1, *Maddy v. Maddy*, 87 W. Va. 581, 105 S.E. 803 (1921)." Syl. Pt. 2, *Belcher v. Powers*, 212 W. Va. 418, 573 S.E.2d 12 (2002). *See* Syl. pt. 2,

11

*Hemphill*, 164 W. Va. 368, 264 S.E.2d 163 ("In ascertaining the intent of the settlor, the entire trust document should be considered.")

With respect to Mr. Coyne's power to amend or revoke the original trust, we have held that "[t]he settlor of an inter vivos trust has power to revoke or modify the trust to the extent the terms of the trust so provide." Syl. Pt. 6, *Proudfoot v. Proudfoot*, 214 W. Va. 841, 591 S.E.2d 767 (2003). "The grantor may revoke or amend a revocable trust. . . [b]y substantially complying with a method provided in the terms of the trust instrument[.]" W. Va. Code § 44D-6-602(c)(1) (2011). Under Section 1.2 of the original trust, Mr. Coyne "reserve[d] the right to amend or revoke this trust during my lifetime by a writing, other than a will or codicil to a will, signed by me and delivered to my Co-Trustee[.]" As a threshold matter, we observe that by arguing that the 2006 writing and 2016 instrument are valid amendments to the original trust, petitioner impliedly concedes that Mr. Coyne complied with Section 1.2 by creating writings, other than a will or codicil to a will, signed by him and delivered to his Co-Trustee.

Turning to the language of the 2016 instrument and Mr. Coyne's stated intention that it "amend and restate" the original trust, we find that the later instrument fully replaced and superseded both the original trust and the 2006 writing that amended it. In *In re Estate of Flake*,[13] the Supreme Court of Utah addressed the legal effect of a "1998

---

[13] 71 P.3d 589, 597 (Utah 2003), *abrogated on other grounds by Mountaineer Enterprises, Inc. v. Homeowners Assoc. for the Colony at White Plains Canyon*, 422 P.3d 809 (Utah 2018).

12

Restatement" of a revocable 1987 Trust Agreement that provided that the settlor could

"amend, modify, revoke, or remove from this Trust the property that he has contributed, in

whole or in part[.]" *Id.* at 592. The 1998 Restatement stated that the settlor "hereby amends

and restates in full" the original trust, resulting in a reduced benefit to the settlor's second

wife. *Id.*[14] In holding that the 1998 Restatement fully superseded the original trust, the *Flake*

court explained that

> [a]lthough it did not detail the provisions of the trust that were specifically amended, as a restatement it merged all of the operative provisions of the 1987 Trust Agreement together with amendments in a single instrument, and therefore superceded [sic] the 1987 Trust Agreement. The clear and unambiguous language of the 1998 Restatement demonstrated that it was intended to supplant the terms of the 1987 Trust Agreement with amended and restated terms. The 1998 Restatement unambiguously references the "Almon J. Flake Family Trust dated September 22, 1987" as "amend[ed] and restate[d] in full," and therefore reflects the settlor's intent to supplant the 1987 Trust Agreement. *See* Restatement (Second) Trusts § 331, cmt. c (stating that if the settlor reserves a power to modify or revoke the trust without specifying the method of modification, the power can be exercised in any manner which manifests the intent of the settlor to modify). In particular, the 1987 Trust Agreement provisions that provide for the "needs of MARIAN R. FLAKE" and which state that "Marian shall also enjoy Almon's Social Security and all existing retirement funds" were superceded [sic] due to their omission from the

---

[14] In *Flake*, the original trust provided, upon the settlor's death, that the trust "'shall care for the needs of [Mrs. Flake] including her living arrangements [and furnishings] in the home of the [settlor] or other reasonable living quarters[,]'" and that she "'shall also enjoy [the settlor's] social security and all existing retirement funds.'" *Flake*, 71 P.3d at 592. The 1998 Restatement stated that Mrs. Flake would receive "the Cadillac" and that the "main part of [the settlor's] home . . . shall be held in a separate trust as a life estate for her benefit[,]" with the trust paying certain costs associated with the property and Mrs. Flake paying other enumerated costs. *Id.* at 593.

13

1998 Restatement. Mrs. Flake is entitled only to what was provided for in the operative provisions of the 1998 Restatement.

*Id.* at 597. *See also Merchants Nat. Bank of Mobile v. Cowley*, 89 S.2d 616, 623 (Ala. 1956) ("[I]t seems to us that the language of the 1952 agreement [which amended and restated a prior trust agreement] clearly shows that it was considered by the parties as superseding the prior existing agreement. . . . How can we say that this 1952 agreement is but an amendment of the 1949 agreement, as amended? The 1952 agreement is in itself a complete entity. Although it gives powers previously given and imposes duties previously imposed, it embodies all the terms and conditions of a new trust."); *In re Estate of Kneznek*, 727 N.Y.S.2d 180, 181 (N.Y. App. Div. 2001) ("whether we speak in terms of 'revocation' or 'amendment,'. . . the clear and unambiguous language of the 1990 agreement demonstrates that it was intended to . . . supplant the terms of the existing trust with amended and restated terms").

Here, the title of the 2016 instrument declares that it "amended and restated" the original trust. Substantively, it amended particular terms of the original trust and also restated all of the original trust terms in full – those that were revised as well as those that remained the same. As an amended and restated trust, the 2016 instrument "merged all of the operative provisions of [the original trust] together with amendments in a single instrument and therefore super[s]eded [the original trust]." *Flake*, 71 P.3d at 597. Indeed, the clear and unambiguous language of the 2016 instrument demonstrates that it constitutes the entire trust, rather than an amendment to the original trust. The 2016 instrument is

identified throughout as "this trust." For example, Section 1.1 states, "I declare and confirm *this trust*, . . . and I agree to the terms and provisions of *this trust agreement*" (emphasis added); Section 1.2 states, "I reserve the right to withdraw any part or all of the assets in *this trust* [and] . . . . the right to amend or revoke *this trust* during my lifetime" (emphasis added); Section 1.3 states, "I declare and assign ownership of my tangible personal property . . . to *this trust*" (emphasis added); Section 1.4 states, "*This trust* will be treated as a grantor trust for income purposes for my lifetime" (emphasis added); and Section 2.3(B) states, "It is my intent that my wishes [for the distribution of certain items of tangible personal property as may be made by list or memorandum] will be carried out, and the list or memorandum shall be considered part of *this trust* and legally binding" (emphasis added). If we concluded that the 2016 instrument is merely an amendment to the original trust rather than the complete statement of Mr. Coyne's intentions at the time it was made, the above-quoted trust provisions would be, at best, confusing, and at worst, meaningless, a result at odds with both trust law in general, 90 C.J.S. *Trusts* § 215 ("If possible, effect should be given to all the language of a trust instrument, with no part being treated as meaningless, a nullity, or surplusage."), and our law in particular. "In the construction of a deed or other legal instrument, the function of a court is to ascertain the intent of the parties as expressed in the language used by them." *Davis v. Hardman,* 148 W.Va. 82, 89, 133 S.E.2d 77, 81 (1963) (internal citations omitted). Thus, taking and considering all of the parts of the 2016 instrument together, *see* 76 Am. Jur. 2d *Trusts* § 34 ("[A] court should construe the trust instrument to give effect to all provisions in it, so that no provision is rendered meaningless, and all terms in a trust instrument must be harmonized to properly

15

give effect to all parts of the trust instrument."), it is abundantly clear that Mr. Coyne intended that it would supersede all prior trust documents.

In the final analysis, only the 2006 amendment to the original trust included the gift of the Waverly Drive residence to petitioner. It is undisputed that the 2006 amendment was not incorporated by reference into the 2016 instrument and so, as a result, petitioner was not entitled to ownership of the Waverly Drive residence (or any of the household belongings also mentioned in the amendment) upon Mr. Coyne's death. *See* Syl. Pt. 4, *Cyfers v. Cyfers*, 233 W. Va. 528, 759 S.E.2d 475 (2014) (requiring that the intention to incorporate the extrinsic document into the written instrument clearly appear from the instrument and that the reference in the instrument identify the extrinsic document with sufficient certainty that the extrinsic document referenced is the written document proffered).

Finally, we recognize that the circuit court did not find the 2006 writing to be an amendment to the original trust and, so, our analysis diverges from that of the circuit court. Nonetheless, we affirm the circuit court's ultimate ruling that the Waverly Drive residence did not pass to petitioner upon Mr. Coyne's death because "'[t]his Court may, on appeal, affirm the judgment of the lower court when it appears that such judgment is correct on any legal ground disclosed by the record, regardless of the ground, reason or theory assigned by the lower court as the basis for its judgment.' Syllabus point 3, *Barnett v.*

16

*Wolfolk,* 149 W.Va. 246, 140 S.E.2d 466 (1965)." Syl. Pt. 2, *Adkins v. Gatson*, 218 W. Va. 332, 624 S.E.2d 769 (2005).[15]

---

[15] Petitioner also argues on appeal that if the Court determines that the 2006 writing was not a valid amendment to the original trust but, instead, an unsuccessful attempt by Mr. Coyne to distribute real property by external list or memorandum under Section 2.3(B) of the original trust, then the Court should exercise its authority to reform the trust to conform to Mr. Coyne's intent that petitioner receive the Waverly Drive residence upon his death or at least permit discovery on the issue. *See* W. Va. Code § 44D-4-415 (2011) ("The court may reform the terms of a trust, even if unambiguous, to conform the terms to the grantor's intention if it is proved by preponderance of the evidence that both the grantor's intent and the terms of the trust instrument were affected by a mistake of fact or law, whether in expression or inducement."). We need not address this argument because (1) we agree with petitioner that the 2006 writing was an amendment to the original trust rather than an external list or memorandum created pursuant to Section 2.3(B); (2) the 2016 instrument, being clear and unambiguous, superseded all prior trust instruments, including the 2006 writing; and (3) in any event, petitioner waived the argument that any of the trust documents should be judicially reformed because she failed to raise the issue before the circuit court in the first instance. *See Zaleski v. W. Va. Mut. Ins. Co.*, 224 W. Va. 544, 550, 687 S.E.2d 123, 129 (2009) ("Because this argument is now being raised for the first time on appeal, we must necessarily find that the argument . . . has been waived."); *Barney v. Auvil*, 195 W. Va. 733, 741, 466 S.E.2d 801, 809 (1995) ("Our general rule is that nonjurisdictional questions not raised at the circuit court level, but raised for the first time on appeal, will not be considered.").

Finally, petitioner argues that discovery should be permitted to determine whether she is entitled to legal ownership of the Waverly Drive residence under the equitable doctrines of waiver and/or estoppel. Waiver applies where there is evidence "that a party has intentionally relinquished a known right" while "[e]stoppel applies when a party is induced to act or to refrain from acting to her detriment because of her reasonable reliance on another party's misrepresentation or concealment of a material fact." Syl. Pt. 1, in part, *Potesta v. United States Fid. & Guar. Co.*, 202 W. Va. 308, 504 S.E.2d 135 (1998) (quoting Syl. Pt. 2, in part, *Ara v. Erie Ins. Co.*, 182 W. Va. 266, 387 S.E.2d 320 (1989)).

As we have already determined, the 2016 instrument is the controlling trust instrument and does not convey ownership of the Waverly Drive residence to petitioner. Petitioner maintains that, even so, if discovery were to show that respondent (1) distributed certain items of tangible personal property consistent with the 2006 writing even though

Continued . . .

## IV. Conclusion

For all of the foregoing reasons, we conclude that the circuit court did not err in dismissing petitioner's complaint. Accordingly, the circuit court's order denying petitioner's Rule 59(e) motion to alter or amend the dismissal order is hereby affirmed.

Affirmed.

respondent claimed that writing was a nullity once the 2016 instrument was executed, or (2) advised Mr. Coyne that the 2006 writing would operate to convey the Waverly Drive residence to petitioner, then equity would permit respondent to unilaterally modify the clear and unambiguous terms of the 2016 instrument in order to convey that property to her. We disagree. "[T]he trustee . . . of a trust [has] only such power to terminate the trust or to change its terms as is granted by the terms of the trust." *Restatement (Third) of Trusts* § 64, at 467 (2003). *See also* W. Va. Code § 44D-8-801 (2011) ("[T]he trustee shall administer the trust . . . in accordance with its terms and purposes and the interests of the beneficiaries, and in accordance with this chapter"). Petitioner offers no legal authority that would permit respondent to administer the trust contrary to its clear and unambiguous terms. *See State ex rel. Ins. Com'r of State of W. Virginia v. Blue Cross & Blue Shield of W. Virginia, Inc.*, 219 W. Va. 541, 549 n.27, 638 S.E.2d 144, 152 n.27 (2006) ("Blue Cross could not unilaterally alter the requirement that the corpus of the trust be returned at the end of the trust period."). Accordingly, we find this argument to be without merit.

18